UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

**FAMILY TACOS, LLC,**

        **Plaintiff,**

**v.**

**AUTO OWNERS INSURANCE COMPANY,**

        **Defendant.**

**Case No.:**

**Judge:**

**NOTICE OF REMOVAL**

Defendant Auto Owners Insurance Company gives notice that this matter is removed from the Portage County, Ohio Court of Common Pleas to the United States District Court for the Northern District of Ohio under the Class Action Fairness Act and 28 U.S.C. § 1332. In support of this Notice, Auto Owners states:

**I.   Background**

1. Plaintiff Family Tacos, LLC filed its putative class action complaint against Auto Owners in the Portage County, Ohio Court of Common Pleas on July 22, 2020. The Complaint was served on Auto Owners on July 31, 2020. A copy of the Docket, Summons, Complaint, and Proof of Service are attached as **Exhibit A** to this Notice.

2. The attached documents constitute all process, pleadings, and orders received or obtained by Auto Owners in this action.

3. This Notice of Removal is timely because it has been filed within 30 days of service of the Complaint. *See* 28 U.S.C. § 1446(b)(1); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999) (time for removal calculated from date of formal service of the summons and complaint).

4. Auto Owners is the only Defendant against whom claims have been raised in this case.[1] Therefore, each Defendant has consented to removal in accordance with 28 U.S.C. § 1446(b)(2)(A).

5. A case may be removed to federal court if it could have been brought in that federal court originally. 28 U.S.C. § 1441(a), (b); *Rivet v. Regions Bank of La.*, 522 U.S. 470, 474-75 (1998).

6. This case could have been originally filed in federal court on two separate grounds. *First*, Plaintiff's nationwide class allegations provide this Court with jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") because there is minimal diversity between the parties, the amount in controversy on behalf of the nationwide class exceeds $5 million, and the nationwide class consists of more than 100 members. *See* 28 U.S.C. § 1332(d)(2), *Nessel ex rel. Mich. v. Amerigas Partners, L.P.*, 954 F.3d 831, 834 (6th Cir. 2020). *Second*, looking solely to the named parties, diversity jurisdiction exists under 28 U.S.C. § 1332 because there is complete diversity between Plaintiff and Auto Owners, and because the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332; *Exact Software N. Am., Inc. v. DeMoisey*, 718 F.3d 535, 541 (6th Cir. 2013).

**II.** **This Case Is Removable Under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).**

7. To begin, federal jurisdiction is satisfied under the Class Action Fairness Act based on Plaintiff's nationwide class action allegations.

8. "Congress through CAFA sought to relax the requirements of diversity jurisdiction in order to make it easier for plaintiffs to bring certain interstate class actions and mass actions in

---

[1] The case caption also lists Michael Meadows as a person to "also serve," but Meadows is not mentioned at all in the body of the Complaint as a party or otherwise. To the extent Meadows was intended to be named as a party (which Auto Owners does not believe to be the case), his consent would still not be needed to remove the case under the Class Action Fairness Act, which allows for removal "by any defendant without the consent of all defendants." 28 U.S.C. § 1453(b).

2

federal court." *Nessel ex rel. Mich. v. Amerigas Partners, L.P.*, 954 F.3d 831, 834 (6th Cir. 2020). "Under CAFA, a federal court has original jurisdiction over a class action when (1) there is minimal diversity of citizenship between the parties; (2) the aggregate amount in controversy exceeds $5 million; and (3) the proposed class contains at least 100 members." *Id.* (citing 28 U.S.C. §§ 1332(d)(2)-(6)). Each requirement is met in this case.

### A. There Is Minimal Diversity Between the Parties.

9. CAFA's minimal diversity requirement is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

10. Auto Owners is a Michigan mutual insurance company with its principal place of business in Lansing, Michigan. (Compl. ¶ 2.)

11. Plaintiff seeks to represent a putative class consisting of "[a]ll individuals and entities *throughout the United States* who, from January 1, 2020 to the present have been insured by Commercial and/or Business Owner Policies issued by Defendant and denied Business Income loss, Extra Expense and/or Civil Authority coverage due to COVID-19." (Compl. ¶ 42(a).) Because Plaintiff's putative class consists of non-Michigan class members, minimal diversity exists. *See, e.g.*, *Kuns v. Ford Motor Co.*, 543 F. App'x 572, 574 n.1 (6th Cir. 2013).

### B. The Proposed Class Contains At Least 100 Members.

12. In addition, Plaintiff alleges that it believes "that Class Members number at least in the many thousands and possibly millions and are sufficiently numerous and geographically dispersed . . . so that joinder of all Class Members is impracticable." (*Id.* ¶ 45.) Thus, the proposed class "contains at least 100 members." *Nessel*, 954 F.3d at 834.

3

### C. The Aggregate Amount in Controversy Exceeds $5 Million.

13. Finally, even looking to the low end of Plaintiff's class definition, and assuming there are 1,000 putative class members (despite the allegation that the class numbers "at least in the many thousands"), the class members would need only to seek $5,000 in damages on average to exceed CAFA's aggregate amount in controversy requirement.

14. Here, looking just to the breach of contract claim, Plaintiff alleges that "Plaintiff and the Class Members have incurred substantial and ongoing monetary damages in excess of $25,000.00." (*Id.* ¶ 66.) Thus, Plaintiff is seeking actual damages of at least $25,000 on behalf of at least 1,000 putative class members, putting the amount in controversy in excess of $25 million for this claim alone.

15. In addition, Plaintiff's Bad Faith claim seeks to represent a Sub-Class of Ohio class members who seek punitive damages and attorney's fees, and who have also alleged actual damages of no less than $25,000.00 for that claim. (*Id.* ¶ 79.) As explained in more detail below, each member of the Ohio Sub-Class, including Plaintiff, has effectively alleged damages in excess of $100,000.

WHEREFORE, because (1) there is minimal diversity between Auto Owners and the putative class, (2) the putative class contains at least 100 members, and the putative class seeks damages in excess of $5 million, this case is removable under the Class Action Fairness Act.

### III. Diversity Jurisdiction Is Satisfied Between Plaintiff and Auto Owners

16. In addition to CAFA, this case is also removable because there is diversity of citizenship between the named Plaintiff and Auto Owners.

17. "Federal courts have 'original jurisdiction of all civil actions . . . between citizens of different States' when the amount in controversy exceeds $75,000." *Exact Software*, 718 F.3d

4

at 541 (citing 28 U.S.C. § 1332(a)(1)) (alterations in *Exact Software*). Here, there is complete diversity between the parties, and the amount in controversy exceeds $75,000.

    **A.    Diversity of Citizenship**

18. As to diversity of citizenship, "'[c]omplete diversity between all plaintiffs and all defendants' is required; no plaintiff can be a citizen of the same State as any defendant." *Exact Software*, 718 F.3d at 541 (quoting *Lincoln Prop Co. v. Roche*, 546 U.S. 81, 89 (2005)).

19. "When determining diversity of citizenship, a limited liability company has the citizenship of each of its members." *Smith v. J.J.B. Hilliard, W.L. Lyons, LLC*, 578 F. App'x 556, 560 (6th Cir. 2014). Corporations, on the other hand, are "deemed to be a citizen of every State . . . by which [they have] been incorporated and of the State . . . where [they have their] principal place of business." 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 88 (2010).

20. Based on information known to Auto Owners, Plaintiff Family Tacos is a 10-member limited liability company. The members include: Thomas Ingersoll, Richard Ingersoll, Carol Ingersoll, Delores Ingersoll, Linda Ingersoll Charles Ingersoll, and Betsy Meyer who, based on publicly available information, are believed to be domiciled in Ohio; James Marrinan and Cynthia Marrinan who are believed to be domiciled in Potomac, Maryland; Mac Adam Glinn who is believed to be domiciled in Glencoe, IL; and Linda Garcia, Maria Covington, and Kristin Brown, who are not believed to be domiciled in Michigan.

21. Auto Owners is a Michigan corporation with its principal place of business in Lansing, Michigan. (Compl. ¶ 2.)

22. Because, upon information and belief, Family Tacos and Auto Owners are not citizens of the same state, complete diversity exists. *Exact Software*, 718 F.3d at 541.

5

**B.     Amount in Controversy**

23.     As to the amount in controversy, it is the removing party's burden "to establish by a preponderance of the evidence that § 1332's amount-in-controversy requirement [is] met." *Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 F. App'x 463, 471 (6th Cir. 2019). Thus, removing parties must only show that it is "more likely than not" that the plaintiff will recover "at least $75,000.01 should he be successful in proving his legal claims." *Id.* "Such a preponderance of the evidence test . . . 'does not place upon the defendant the daunting burden of proving, *to a legal certainty*, that the plaintiff's damages are not less than the amount-in-controversy requirement. Such a burden might well require the defendant to research, state, and prove the plaintiff's claim for damages.'" *Id.*

24.     When calculating the amount in controversy, this Court may aggregate the damages requested for each individual claim. *Klepper v. First Am. Bank*, 916 F.2d 337, 341 (6th Cir. 1990) ("It is well established that claims can be aggregated to satisfy the jurisdictional amount in controversy."); *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006) ("[A] single plaintiff may aggregate the value of her claims against a defendant to meet the amount-in-controversy requirement, even when those claims share nothing in common besides the identity of the parties[.]").

1.     Actual Compensatory Damages Alleged in Complaint

25.     The Complaint here raises three claims: (1) declaratory judgment, (2) breach of contract, and (3) breach of the duty of good faith and fair dealing, which Plaintiff labels as "bad faith." Plaintiff states that "[a]s a direct and proximate result of Defendant's breach of contract, Plaintiff and the Class Members have incurred substantial and ongoing monetary damages in excess of $25,000.00." (Compl. ¶ 66.) Plaintiff further alleges that it is entitled to additional

6

damages "in excess of $25,000" due to Auto Owners' "independent tort of bad faith in the context of the insured/insurer relationship." (*Id.* ¶¶ 68, 79.)

26. Thus, the face of Plaintiff's Complaint alleges "substantial" monetary damages that, at the time the Complaint was filed, were no less than $50,000.00. Given that these damages are also "ongoing," and that the amount in controversy is calculated as of the time of removal (rather than at the time the Complaint is filed), *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 375 (6th Cir. 2007), in all likelihood, these damages were much greater.

### 2. Punitive Damages

27. In addition, "[w]hen determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered . . . unless it is apparent to a legal certainty that such cannot be recovered." *Heyman*, 781 F. App'x at 471 (citations omitted).

28. Here, as part of Plaintiff's "independent tort of bad faith in the context of the insured/insurer relationship," Plaintiff alleges that Auto Owners acted maliciously, and seeks "punitive and exemplary damages." (Compl. ¶¶ 68, 79.)

29. These damages are recoverable if Plaintiff proves its claims. "If proven, . . . a bad faith claim justifies recovery of more than contractual damages from the insurance policy, and Ohio law permits an award of compensatory and punitive damages against insurers who act in bad faith. Under § 2315.21(D)(2)(a) of the Ohio Revised Code, a court may award punitive damages up to two times the amount of compensatory damages awarded." *Pollock v. State Farm Mut. Auto Ins. Co.*, No. 2:11-cv-0581, 2011 U.S. Dist. LEXIS 124312, at *6 (S.D. Ohio Oct. 26, 2011).

30. When calculating the amount in controversy, the Sixth Circuit and Ohio's federal courts have found that a 2:1 punitive-to-compensatory damages ratio is reasonable. *See Heyman*, 781 F. App'x at 472-73 ("[E]ven a 2:1 ratio of punitive damage to compensatory damages would

7

place the amount in controversy . . . well over $90,000 . . . [defendant] has [therefore] proven by a preponderance of the evidence that Heyman's lawsuit indeed could result in a recovery exceeding the minimum monetary amount necessary to invoke the diversity jurisdiction of the federal courts."); *Harrell v. Allstate Ins. Co.*, No. 1:11-cv-209, 2011 U.S. Dist. LEXIS 32600 (N.D. Ohio Mar. 28, 2011) (Polster, J.) (finding amount in controversy satisfied when plaintiff sought attorney's fees, $15,000 in breach of contract damages, $15,000 in bad faith insurance denial damages, and punitive damages after recognizing that, "[g]iven the $15,000 in compensatory damages on the bad-faith claim, Plaintiff may recover up to $30,000 on her claim for punitive damages."); *Pollock*, 2011 U.S. Dist. LEXIS 124312, at *8 ("If Pollock is successful, she could receive the full amount she alleges is due to her under the insurance policy, $33,000, plus compensatory and/or punitive damages in connection with her bad faith claim – an amount which could easily exceed this Court's jurisdictional threshold."); *Turchan v. Equity for Life, LLC*, No. 2:07-cv-0435, 2009 U.S. Dist. LEXIS 112032, at *9 (S.D. Ohio Dec. 1, 2009) (amount in controversy satisfied when actual damages requested was $24,068.16 because "[a] punitive damages award well within the constitutional guidelines outlined by the Supreme Court would meet the amount in controversy requirement for diversity jurisdiction.");

31.     Here, Plaintiff seeks greater than $25,000 in compensatory damages for breach of contract, greater than $25,000 in compensatory damages for bad faith, on top of punitive damages for the bad faith claim, which can be calculated at $50,000 (twice the compensatory damages requested for that claim). Thus, the amount of compensatory and punitive damages is no less than $100,000.00, exceeding the jurisdictional threshold.

      3.    <u>Attorney's Fees</u>

32.    Finally, "statutorily-authorized attorney's fees" may also be considered when calculating the amount in controversy." *Williamson*, 481 F.3d at 376. As this Court has recognized, "Ohio law specifically contemplates that attorneys fees may be awarded against a defendant who has been found liable for punitive damages." *Harrell*, 2011 U.S. Dist. LEXIS 32600, at *9 (citing Ohio Rev. Code § 2315.21(D)(2)(C)).

33.    Here, Plaintiff requests attorney's fees as part of its bad faith claim. (Compl. ¶ 80.) Even applying a conservative 25 percent contingency-fee on the amount of damages—as the Sixth Circuit did in *Heyman*, 781 F. App'x at 473-73—that would still add at least an additional $25,000.00 in damages.

## IV.   **Conclusion**

34.    For the reasons stated above, this case could have originally been filed in federal court and is therefore removable.

35.    Venue is proper in this Court because the Portage County Court of Common Pleas is located in this District. *See* 28 U.S.C. § 1441(a); 28 U.S.C. § 115(a)(1).

36.    In accordance with 28 U.S.C. § 1446(d), a Notice of Filing of Removal and a copy of this Notice of Removal will be promptly filed with the Portage County Court of Common Pleas. A copy of that Notice will be served upon Plaintiff.

37.    Defendants' first responsive pleading will be filed within 7 days of the date of removal. *See* Fed. R. Civ. P. 81(c)(2).

WHEREFORE, Defendants serve this Notice that this action has been removed to the United States District Court for the Northern District of Ohio.

9

Dated:  August 28, 2020               /s/ *Lori McAllister*
                                      Lori McAllister (MI Bar No. 39501)
                                      Theodore W. Seitz (MI Bar No. 60320)
                                      Kyle M. Asher (0098458)
                                      DYKEMA GOSSETT PLLC
                                      201 Townsend St., Ste. 900
                                      Lansing, MI 48933
                                      Tele:  (517) 374-9150
                                      lmcallister@dykema.com

                                      *Counsel for Auto Owners Insurance Company*

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

## **CERTIFICATE OF SERVICE**

    I hereby certify that on August 28, 2020, my assistant caused the foregoing to be electronically filed with the Clerk of the Court using the electronic filing system, as well as mailed using first class mail, postage prepaid, to counsel of record and to the Clerk of the Court, Portage County Court.

Dated:  August 28, 2020             /s/ *Lori McAllister*
                                                    Lori McAllister (MI Bar No. 39501)
                                                    DYKEMA GOSSETT PLLC
                                                    201 Townsend St., Ste. 900
                                                    Lansing, MI 48933
                                                    Tele:  (517) 374-9150
                                                    lmcallister@dykema.com

                                                    *Counsel for Auto Owners Insurance Company*

076799.000128  4850-8922-5415.4

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933