## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| FAMILY TACOS, LLC, | ) | Case No. 5:20-cv-01922 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Kathleen B. Burke |
| | ) | |
| AUTO OWNERS INSURANCE COMPANY, | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

## OPINION AND ORDER

Plaintiff Family Tacos, LLC filed a lawsuit on behalf of a putative class against Defendant Auto Owners Insurance Company in State court, which Defendant removed to federal court on the basis of diversity jurisdiction under the Class Action Fairness Act of 2005 and 28 U.S.C. § 1332. Plaintiff moves to remand. (ECF No. 7.) For the following reasons, the Court **DENIES** Plaintiff's Motion to Remand.

### STATEMENT OF THE CASE

Plaintiff is an Ohio limited liability company that operates two restaurants in Portage County. (ECF No. 1-1, PageID #16.) Defendant is a property and casualty insurer, which issued a commercial business insurance policy to Plaintiff. (*Id.*, PageID #16–17.) Plaintiff claims it lost business income because of the COVID-19 pandemic and that the insurance policy covers the loss. (*Id.*, PageID #18–20.) Further, Plaintiff alleges that Defendant has or will wrongly deny insurance claims for losses caused by the COVID-19 pandemic. (*Id.*, PageID #21–22.) In doing so, Plaintiff alleges Defendant denied claims in bad faith by failing adequately to

investigate the claims and by applying an inapplicable "virus/bacteria exclusion." (*Id.*, PageID #33–35.)

Plaintiff' seeks to bring its claims on behalf of (1) a nationwide class seeking declaratory relief; (2) a nationwide sub-class seeking restitution and monetary damages; and (3) an Ohio sub-class for insurance bad faith under Ohio law. (*Id.*, PageID #24–25.) On behalf of itself and these classes, Plaintiff alleges three claims: (1) declaratory judgment; (2) breach of contract; and (3) breach of the covenant of good faith and fair dealing (bad faith). (*Id.*, PageID #29–35.) Plaintiff asks the Court to enter several declarations related to the scope of the policy coverage regarding the losses the complaint describes. (*Id.*, PageID #30–31.) In addition to declaratory relief, Plaintiff seeks monetary damages for Defendant's alleged breaches of contract and punitive damages, costs, and attorney fees. (*Id.*, PageID #35.)

## LEGAL STANDARD

To remove a case from state court to federal court, a defendant "must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83, (2014) (quoting 28 U.S.C. § 1446(a)). Defendants "may remove a civil case from state court to federal court if the action could have originally been brought in federal court." *Nessel ex rel. Mich. v. AmeriGas Partners, L.P.*, 954 F.3d 831, 834 (6th Cir. 2020) (citations omitted); *see also* 28 U.S.C. § 1441.

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 USC § 1447(c). Removal

2

statutes are strictly construed, and "'all doubts should be resolved against removal.'" *Mays v. City of Flint*, 871 F.3d 437, 442 (6th Cir. 2017) (quoting *Harnden v. Jayco, Inc.*, 496 F.3d 579, 581 (6th Cir. 2007)). Where a party removes a case under the Class Action Fairness Act, however, courts need not presume that removal is improper. *Nessel*, 954 F.3d at 834 (citing *Dart Cherokee*, 574 U.S. at 89).

## ANALYSIS

Defendant removed this case based on diversity jurisdiction under Section 1332 and the Class Action Fairness Act. "The removing defendant has the burden to establish federal subject-matter jurisdiction." *Tennial v. Bank of America, N.A.*, No. 17-6377, 2020 WL 2530872, at *1 (6th Cir. Apr. 15, 2020).

### I.     Federal Jurisdiction

In general, "[f]ederal courts have original jurisdiction over two types of cases: cases that involve a federal question . . . and cases in which there is complete diversity of citizenship between the parties and the amount in controversy requirement is satisfied." *Nessel*, 954 F.3d at 834 (citing 28 U.S.C. §§ 1331, 1332(a)). Diversity jurisdiction exists under Section 1332 where the dispute is between citizens of different states and where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

#### I.A.   Diversity Jurisdiction

"[F]or diversity jurisdiction to be proper under § 1332, no plaintiff and no defendant can be the citizen of the same state." *Tennial*, 2020 WL 2530872, at *1. A corporation, like Defendant, has the citizenship of its state of incorporation and its

3

principal place of business. *Roberts v. Mars Petcare US, Inc.*, 874 F.3d 953, 956 (6th Cir. 2017). As a limited liability company, Plaintiff "has the citizenship of each of its members." *Tennial*, 2020 WL 2530872, at *1. Where the members of an LLC are individuals, citizenship is based on the person's domicile. *Id.* "'Domicile,' a legal term of art, requires that a person *both* be present in a state *and* have "the intention to make his home there indefinitely or the absence or an intention to make his home elsewhere." *Prime Rate Premium Fin. Corp. v. Larson, 930 F.3d 759, 765 (6th Cir. 2019).* (quoting *Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir. 1973)).

Defendant is a citizen of Michigan because it is a Michigan corporation with its principal place of business in Michigan. (ECF No. 1, PageID #5; ECF No. 1-1, PageID #16.) According to Defendant's notice of removal, Plaintiff has ten members. (*Id.*) However, Defendant lists the names of thirteen individuals as members. (ECF No. 1, PageID #5.) Seven of the named individuals are domiciled in Ohio; two in Maryland; and one in Illinois. (*Id.*) Defendant asserts that last three individuals "are not believed to be domiciled in Michigan." (*Id.*) Plaintiff does not challenge this allegation, which suffices for Defendant to invoke and the Court to exercise diversity jurisdiction. Because the statute requires only a short and plain statement of the grounds for removal, tracking the general pleading standard of Rule 8, *Dart Cherokee*, 574 U.S. at 87, this allegation negates grounds that would defeat diversity and suffices to establish federal jurisdiction, *see, e.g.*, *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 (3d Cir. 2015).

4

### I.B. The Class Action Fairness Act

Under the Class Action Fairness Act, a relaxed form of diversity jurisdiction applies. *Nessel*, 954 F.3d at 841. The Act gives federal courts jurisdiction over interstate class actions where "(1) there is minimal diversity of citizenship between the parties; (2) the aggregate amount in controversy exceeds $5 million; and (3) the proposed class contains at least 100 members." *Nessel*, 954 F.3d at 834 (citations omitted). Minimal diversity under the Act allows a federal court to exercise jurisdiction where "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

Here, Defendant carries its burden to meet this jurisdictional threshold because the complaint seeks certification of a nationwide class, which Plaintiff alleges "number[s] at least in the many thousands and possibly millions"—well in excess of the statutory minimum of one hundred putative class members. (ECF No. 1-1, PageID #25.) Defendant and at least one Plaintiff are citizens of different States. With respect to damages, the complaint claims at least $25,000 in compensatory damages individually and on behalf of all class members. (*Id.* at PageID #32, 34.) Aggregating the damages claimed on behalf of Plaintiff and all class members plausibly puts more than $5 million in controversy, even setting aside the potential for damages on Plaintiff's claim for insurance bad faith under Ohio law. *See Dart Cherokee*, 574 U.S. at 89. Therefore, Defendant has shown that the Court has jurisdiction under the Class Action Fairness Act.

**II. Remand**

This case involves a hybrid complaint in that Plaintiff seeks different types of relief. Plaintiff seeks declaratory relief in count one of the complaint and monetary relief in counts two and three. The Court's authority to remand varies based on the type of claim.

**II.A. Remanding Claims for Damages (Counts Two and Three)**

Federal courts generally "have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). While the duty is not absolute, federal courts should exercise jurisdiction absent "exceptional circumstances." *Id.* (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, (1976)). While "federal courts may stay actions for damages based on abstention principles, [the Supreme Court has] not held that those principles support the outright dismissal or remand of damages actions." *Id.* at 721.

Where, as here, a federal court "has independent diversity jurisdiction" over damages claims asserted along with a declaratory judgment claim, "it is without discretion to remand" the damages claims. *Tibbitts v. Great N. Ins. Co.*, No. 2:20-cv-10029, 2020 WL 4333546, at *1 (E.D. Mich. July 28, 2020) (citing 28 U.S.C. § 1332(a)) (declining "to remand the declaratory judgment claim while maintaining mandatory jurisdiction over" the damages claims); *see Knowlton Constr. Co. v. Liberty Mut. Ins. Co.*, No. 2:07-cv-0748, 2007 WL 4365690, at *3 (S.D. Ohio Dec. 13, 2007) ("The

6

exercise of jurisdiction over damage claims is mandatory and not discretionary as it is for the declaratory judgment claim.").

Nonetheless, Plaintiff asks the Court to remand these claims based on its discretionary authority to remand the declaratory judgment claim. Plaintiff characterizes its damages claims as secondary or contingent to its declaratory judgment claim. (ECF No. 7, PageID #545–47.) Based on this characterization, Plaintiff argues that "[b]ecause monetary relief is contingent upon first successfully obtaining declaratory relief, the only controversy before this Honorable Court is declaratory relief . . ., which there is no mandate for exercising jurisdiction, but instead clear discretion." (*Id.*, PageID #545.) For this proposition, Plaintiff relies on *Gooch v. Life Investors Insurance Co. of America*, 672 F.3d 402 (6th Cir. 2012). But *Gooch* merely granted certification of a declaratory-judgment class and deferred certification of a sub-class for monetary damages. *Id.* at 427–28. That sort of case management decision under Rule 23 has no application to the exercise of jurisdiction more generally, let alone discretion to remand claims over which the Court has removal jurisdiction. *See Equity Planning Corp. v. Westfield Ins. Co.*, No. 1:20-CV-01204, 2020 WL 5909806, at *6 (N.D. Ohio Oct. 6, 2020) (explaining that the "issue in *Gooch* was not one of jurisdiction, but one of class certification").

Plaintiff also relies on *Brillhart v. Excess Insurance Co.*, 316 U.S. 491 (1942), arguing that under *Brillhart*, "this Honorable Court is under no compulsion to exercise its jurisdiction" even though the Complaint includes claims for damages and declaratory relief. (ECF No. 7, PageID #543.) There, an insurer brought a federal

7

suit for declaratory judgment to determine its rights under an insurance contract and sought only declaratory relief. *Id*. at 492. Later, after the insurer became a party in a parallel state suit involving a claim for monetary relief against its insured, the federal courts reached different conclusions on the propriety of exercising federal jurisdiction in the original action. Ultimately, the Supreme Court confirmed that jurisdiction under the Declaratory Judgment Act is discretionary and remanded for the district court to determine whether the federal claims "could adequately be tested" in the state proceedings. *Id.* at 495.

The Court declines to remand under *Brillhart*. Procedurally, the case bears little resemblance to this one. At bottom, *Brillhart* confirms that the discretion afforded under the Declaratory Judgment Act applies only to claims for declaratory relief and cannot be used also to remand claims for damages. Nor does Plaintiff's argument based on *Brillhart* speak to the obligation of the Court to exercise jurisdiction, properly invoked. Nothing about the complaint presents exceptional circumstances justifying a decision not to exercise jurisdiction over Plaintiff's claims for monetary damages. Plaintiff's argument does not alter the conclusion that the Court lacks discretion to remand claims for monetary relief over which it has jurisdiction. *Quackenbush*, 517 U.S. at 716; *Tibbitts*, 2020 WL 4333546, at *1 (citing 28 U.S.C. § 1332(a)); *Knowlton*, 2007 WL 4365690, at *3.

### II.B. Remanding Claims for Declaratory Relief (Count One)

In contrast, the Declaratory Judgment Act grants federal courts discretion over whether to exercise jurisdiction over a claim for declaratory relief, even where the

claim otherwise satisfies jurisdictional requirements. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995); *Brillhart*, 316 U.S. at 495. To determine whether to exercise jurisdiction over a declaratory action, courts consider the following five factors:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (quotation omitted).

When considering the fourth factor, courts also look to the following three sub-factors:

> (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 560 (6th Cir. 2008) (citing *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 814–15 (6th Cir. 2004)).

### II.B.4. Application of the *Grand Trunk* Factors

Because this Court could stay the breach of contract and bad faith claims and decline to exercise jurisdiction over the declaratory judgment claim, the Court analyzes the *Grand Trunk* factors to determine whether to remand the declaratory judgment claim. *See, e.g., Mikmar, Inc. v. Westfield Ins. Co.*, No. 1:20-cv-01313, 2020

9

WL 6127912, at *4 (N.D. Ohio Oct. 19, 2020) (citations omitted); *Equity Planning*, 2020 WL 5909806, at *6.

Underlying each factor are "considerations of efficiency, fairness, and federalism." *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 396 (6th Cir. 2019) (quoting *Western World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014)). The Sixth Circuit has not indicated "the relative weights of the factors[,] but notes that '[t]he relative weight of the underlying considerations . . . will depend on the facts of the case.'" *Id.*

### II.B.4.a. Whether Adjudicating the Declaratory Action Will Settle the Controversy

Courts first consider "whether the district court's judgment would settle the controversy." *Flowers*, 513 F.3d at 554. "The first factor requires the Court to consider whether the dispute at issue is an 'independent dispute' or if there is a parallel state action." *Equity Planning*, 2020 WL 5909806, at *7 (quoting *Clifford v. Church Mut. Ins. Co.*, No. 2:13-cv-853, 2014 WL 4805473, at *2 (S.D. Ohio Sep. 26, 2014)). If the federal case is independent from a state court action, a federal case will settle the dispute. *Clifford*, 2014 WL 4805473, at *2.

Plaintiff maintains that "there are literally hundreds of parallel state court cases that are adjudicating the same business income loss and other insurance coverage issues related to the pandemic, in similar cases to this one." (ECF No. 7, PageID #550.) Assuming this assertion is true, there is no evidence before the Court that any parallel claim in a State court involves the same parties or the policy at issue

10

here. Accordingly, this factor favors jurisdiction because there is no parallel state court action. Exercising jurisdiction over the declaratory judgment claim will allow the Court to resolve the entire controversy between the parties and avoid piecemeal litigation in multiple courts. *See United Specialty*, 936 F.3d at 397–98 (district court did not err in finding that the first factor favored federal jurisdiction where the plaintiff and defendant were the only parties litigating the insurance coverage issue and where the plaintiff failed to identify any parallel state proceedings); *Equity Planning*, 2020 WL 5909806, at *9 (finding that the first *Grand Trunk* factor weighed in favor of jurisdiction where there were no pending parallel state actions) (citation omitted).

### II.B.4.b. Whether Adjudicating the Declaratory Action Will Clarify the Legal Relations at Issue

"The second factor to consider is whether the district court's judgment would clarify the legal relations at issue." *Flowers*, 513 F.3d at 556. The inquiries required by the first two *Grand Trunk* factors "overlap substantially." *United Specialty*, 936 F.3d at 397. "[I]t is almost always the case that if a declaratory judgment will settle the controversy, . . . it will clarify the legal relations in issue." *United Specialty*, 936 F.3d at 397 (quotation omitted).

Plaintiff believes that this case involves novel, unsettled, and complex issues of State law that belong in State court. (ECF No. 7, PageID #549.) But "[t]he second *Grand Trunk* factor does not compare state and federal court adjudication." *Clifford*, 2014 WL 4805473, at *3; *see also Mikmar*, 2020 WL 6127912, at *3 (stating that

11

arguments regarding the application of novel state laws are better addressed under the fourth *Grand Trunk* factor rather than the second). Rather, the second factor asks whether the declaratory judgment Plaintiff seeks will clarify the legal relations at issue and assist the Court in adjudicating Plaintiff's other claims. *Clifford*, 2014 WL 4805473, at *3. Plaintiff's insurance policy either requires Defendant to cover the various losses Plaintiff claims, or it does not. That determination will clarify the rights and obligations of each party under the policy and, therefore, the legal relations at issue. Accordingly, the second *Grand Trunk* factor favors federal jurisdiction.

### II.B.4.c. Procedural Concerns and Res Judicata

"The third factor to consider is whether the use of the declaratory judgment action is motivated by 'procedural fencing' or likely to create a race for *res judicata*." *Flowers*, 513 F.3d at 558. The inquiry focuses on whether the declaratory plaintiff has filed first to attempt to secure a judgment in its preferred forum. *United Specialty*, 936 F.3d at 399. Without evidence of procedural fencing, this factor is often considered neutral. *Id.*

Plaintiff argues it is "patently obvious" that Defendant has engaged in procedural fencing because it removed this action "while it knew and/or must have known of literally hundreds of parallel state court cases adjudicating the same issue." (ECF No. 7, PageID #551.) However, Plaintiff concedes that "this factor does not come into play" because Defendant did not file suit first to beat Plaintiff to the courthouse. (*Id.* at PageID #551–52.) Similarly, Defendant agrees that "this is not

12

the typical anticipatory lawsuit that courts are concerned about under this factor." (ECF No. 9, PageID #579.)

No concerns exist over procedural fencing or res judicata. Plaintiff filed for declaratory judgment in its chosen forum in State court. Defendant's removal to federal court does not amount to an act of procedural fencing and does not present concerns of res judicata. This factor is neutral.

### II.B.4.d. Whether Adjudicating the Declaratory Action Will Improperly Encroach on State Jurisdiction

The fourth *Grand Trunk* factor asks "whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction." *Grand Trunk*, 746 F.2d at 326. This factor considers whether the case involves "novel or complicated state-law or factual issues." *United Specialty*, 936 F.3d at 400.

The Sixth Circuit has divided this factor into three sub-factors:

> (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Flowers*, 513 F.3d at 560 (citing *Bituminous*, 373 F.3d at 814–15).

Plaintiff argues that the fourth factor favors remand "because of the hundreds of parallel state claims being litigated, that do not involve any federal questions." (ECF No. 7, PageID #552.) Plaintiff believes the issues of law involved are novel and complex and should be decided in state court. (*Id.* at PageID #550.) Defendant argues

that this case "simply requires the Court to apply settled Ohio law to the facts alleged in the Complaint." (ECF No. 9, PageID #580.)

### II.B.4.d.i. Whether the Underlying Factual Issues Are Important to an Informed Resolution

"The first of these sub-factors focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Flowers*, 513 F.3d at 560. There are no underlying factual issues pending resolution in a parallel state lawsuit that would prevent this Court from resolving the coverage question presented in Plaintiff's declaratory relief claim. Therefore, this sub-factor weighs in favor of exercising jurisdiction.

### II.B.4.d.ii. Whether a State Trial Court Is Better Suited to Evaluate Issues

"The second sub-factor focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. This sub-factor addresses whether the coverage issue involves novel or complicated questions of State law. Generally, the presumption is that State courts are better positioned to decide questions of State law. *Id.* However, where State law is clear and there are "no unresolved factual issues relevant to the coverage question," this presumption carries less weight." *United Specialty*, 936 F.3d at 401.

Because there are no parallel State court proceedings that will impact this Court's determination of insurance coverage, "there is no risk that resolution of factual or legal issues by a state court will impact this Court's judgment or vice versa," with regard to the scope of policy coverage. *Equity Planning*, 2020 WL 5909806, at *9

(quoting *Parker Hannifin Corp. v. Standard Motor Prods.*, No. 1:19cv00617, 2019 WL 5425242, at *33 (N.D. Ohio Oct. 23, 2019)). The factual circumstances surrounding Plaintiff's insurance claim may be unprecedented, but applying Ohio insurance law to an insurance policy is not. *Id.* at *28.

Further, Plaintiff seeks to represent a nationwide class of policyholders, which will require the adjudicating court to apply not only Ohio substantive law, but the substantive law of other States as well. *Equity Planning*, 2020 WL 5909806, at *9 (concluding that the state court was not better positioned to adjudicate a declaratory judgment claim than a federal court where the plaintiff raised claims on behalf of a nationwide class) (citing *Pilgrim v. Universal Health Care, LLC*, 660 F.3d 943, 946 (6th Cir. 2011)). There is no reason why an Ohio state court, as opposed to a federal court, would be better equipped to apply the laws of the other 49 states. On the other hand, "[t]his case presents potentially new issues of insurance contract interpretation" that might be better evaluated in state court. *Mikmar*, 2020 WL 6127912, at *3. The second sub-factor is neutral.

### II.B.4.d.iii. Nexus, Public Policy, and Federal Law

"The final sub-factor focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. "[E]ven in cases where state law has not been difficult to apply, [the Sixth Circuit] has usually found that the interpretation of insurance contracts is closely entwined with state public policy." *United Specialty*,

15

936 F.3d at 401. This case involves the interpretation of insurance contracts. Accordingly, the third sub-factor weighs against jurisdiction.

\* \* \*

Considering the three sub-factors together, the first sub-factor weighs in favor of jurisdiction, the second is neutral, and the third weighs against it, rendering the fourth *Grand Trunk* factor neutral overall.

### II.B.4.e. Whether a Better or More Effective Alternative Remedy Exists

"The fifth factor asks 'whether there is an alternative remedy which is better or more effective' than federal declaratory relief." *United Specialty*, 936 F.3d at 401 (quoting *Grand Trunk*, 746 F.2d at 326).

Plaintiff argues that a "state action would be more effective" because it would allow an Ohio state court "to rule on insurance law issues never before decided under state law, related to the novel COVID-19 pandemic." (ECF No. 7, PageID #553.) Plaintiff relies on *Dianoia's Eatery, LLC v. Motorists Mutual Insurance Co.*, No. 20-706, 2020 U.S. Dist. LEXIS 157055 (W.D. Pa. May 19, 2020). Aside from not binding the Court, the plaintiff there did not raise claims for breach of contract or bad faith, as Plaintiff does here. *Id.* at \*1.

Rather than exercise jurisdiction over Plaintiff's entire complaint, the Court could stay the breach of contract and bad faith claims and remand the declaratory judgment claim. *Mikmar*, 2020 WL 6127912, at \*4 (citing *Quackenbush*, 517 U.S. at 716, and *Adrian Energy*, 481 F.3d at 424–25). Such an approach presents obvious

16

inefficiencies compared to adjudicating all three claims in a single action. Where, as here, claims for monetary and declaratory relief are intermingled in the same case, declining to exercise jurisdiction over the declaratory claim lacks any comparative benefit. *Equity Planning*, 2020 WL 5909806, at *9 (citing *Adrian Energy*, 481 F.3d at 422). Therefore, this final factor weighs in favor of jurisdiction.

*   *   *

Taking all five *Grand Trunk* factors together, the first, second, and fifth factors favor jurisdiction while the third and fourth are neutral. On balance, the *Grand Trunk* factors weigh in favor of the Court retaining and exercising jurisdiction. Accordingly, based on consideration of the *Grand Trunk* factors, the Court declines to exercise its discretion to remand Plaintiff's claim for declaratory relief.

## CONCLUSION

For the foregoing reasons, the Court lacks discretion to remand Plaintiff's breach of contract and bad faith claims and declines to remand Plaintiff's claim for declaratory relief. Accordingly, the Court **DENIES** Plaintiff's Motion to Remand (ECF No. 7).

Having determined that federal jurisdiction is proper, Plaintiff shall have 21 days from the date of this order to respond to Defendant's Motion to Dismiss or Strike Nationwide Class Action Allegations (ECF No. 5).

**SO ORDERED.**

17

Dated: January 12, 2021

                                         J. Philip Calabrese
                                         United States District Judge
                                         Northern District of Ohio