# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| FAMILY TACOS, LLC, | ) | Case No. 5:20-CV-01922 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Kathleen B. Burke |
| | ) | |
| AUTO OWNERS INSURANCE | ) | |
| CO., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

During the Covid-19 pandemic, hotels, restaurants, and other hospitality businesses have been particularly hard hit.  Between State and local public health directives and consumer reluctance to travel and to dine out, especially in colder weather, many businesses in the hospitality industry have closed.  Tragically, too many of these closures will be permanent.  Those that have not closed have sustained deep and painful losses.  Various governmental relief efforts have attempted to direct aid to those in the hospitality business, among others.  This lawsuit presents another means by which some have, understandably, sought a financial lifeline to weather the difficulties and uncertainties in which the hospitality industry finds itself through no fault of its own or any particular actor in it.

Plaintiff Family Tacos, LLC, operates two restaurants in Portage County, Ohio.  When it sustained losses due to the pandemic, Plaintiff filed claims for lost business income under its insurance policy with Defendant Auto Owners Insurance Co.  Plaintiff seeks a declaratory judgment on its own and on behalf of a putative

class of other hospitality businesses that Defendant has coverage obligations under its policies due to the Covid-19 pandemic.

Defendant moved to dismiss the complaint or strike the class action allegations.  (ECF No. 5.)  Because the policy at issue does not, as a matter of law, provide coverage for losses sustained due to Covid-19, as more fully explained below, the Court must **GRANT** Defendant's motion to dismiss.  As a result, the Court **DENIES AS MOOT** Defendant's motion to strike the class allegations.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is an Ohio company that operates two restaurants in Portage County. (ECF No. 1-1, ¶ 1, PageID #16.)  Defendant is a property and casualty insurer, which issued a commercial business insurance policy to Plaintiff.  (*Id.*, ¶¶ 2, 7, PageID #16–17.)

Plaintiff claims it lost business income because of the Covid-19 pandemic and that its insurance policy covers the loss.  (*Id.*, ¶¶ 8, 12–14, PageID #18–20.)  Further, Plaintiff alleges that Defendant has or will wrongly deny insurance claims for losses caused by the Covid-19 pandemic.  (*Id.*, ¶ 27, PageID #21–22.)  On behalf of itself and putative class members, Plaintiff alleges three claims:  (1) declaratory judgment; (2) breach of contract; and (3) breach of the covenant of good faith and fair dealing (bad faith).  (*Id.*, ¶¶ 53–80, PageID #29–35.)

### A.    Plaintiff's Insurance Policy

Plaintiff's policy provides coverage for "direct physical loss of or damage to Covered Property at the premises . . . caused by or resulting from any Covered Cause

2

of Loss." (ECF No. 5-3, PageID #317.)  "Covered Cause of Loss" is defined as "[d]irect physical loss," subject to certain exclusions and limitations.  (ECF No. 5-4, PageID #331.) The policy provides "Business Income and Extra Expense" coverage and "Civil Authority" coverage.  (ECF No. 5-5, PageID #340–41.)

### A.1.  Business Income and Extra Expense Coverage

The policy covers the "actual loss of Business Income" sustained "due to the necessary 'suspension' of your 'operations' during the 'period of restoration.'"  (ECF No. 5-5, PageID #340.)  However, the "'suspension' must be caused by direct physical loss of or damage to property at the premises" and the "loss or damage must be caused by or result from a Covered Cause of Loss," which also requires direct physical loss. (*Id.*)  Also, the policy provides Extra Expense coverage, which includes "necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss."  (*Id.*)

Business Income and Extra Expense coverages are both limited by the "period of restoration," which means the time between the "direct physical loss or damage . . . caused by or resulting from any Covered Cause of Loss at the premises" and "the date when the property . . . should be repaired, rebuilt or replaced" or "when new business is resumed at a new permanent location."  (*Id.*, PageID #347–48.)

### A.2.  Civil Authority Coverage

"When a Covered Cause of Loss causes damage to property other than property at the described premises," the policy also provides coverage.  (*Id.*, PageID #341.)  The

3

loss must be "caused by action of civil authority that prohibits access to the described premises" where two conditions are met:

(1)     Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

(2)     The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(*Id.*)

### A.3.   Exclusions

The policy also identifies various coverage exclusions, five of which the parties discuss.  First, the "ordinance or law" exclusion precludes coverage resulting from the "enforcement of any ordinance or law" that "regulat[es] the construction, use or repair of any property" or requires "the tearing down of any property, including the cost of removing its debris.  (ECF No. 5-4, PageID #331.)

Second, the "governmental action" exclusion precludes coverage resulting from the "[s]eizure or destruction of property by order of governmental authority."  (*Id.*)

Third, the "acts or decisions" exclusion precludes coverage resulting from "[a]cts or decisions, including the failure to act or decide, of any person, group, organization or governmental body."  (*Id.*, PageID #334.)  However, where an act or decision results in a Covered Cause of Loss, the policy provides coverage for "the loss or damage caused by that Covered Cause of Loss."  (*Id.*)

4

Fourth, the "loss of use or market" exclusion precludes coverage resulting from "[d]elay, loss of use or loss of market."  (*Id.*, PageID #333.)

Finally, the "virus or bacteria" exclusion precludes coverage for "loss or damage caused by or resulting from virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  (*Id.*, PageID #332.)

These exclusions apply whether they are the direct or indirect cause of any loss or damage.  (*Id.*, PageID #331.)  Where an exclusion applies, the "loss or damage is excluded regardless of any other cause or event that contributed concurrently or in any sequence to the loss."  (*Id.*)

## B.    The Coverage Dispute

Plaintiff alleges it suffered covered insurance losses related to the Covid-19 pandemic and that Defendant owes it and other policyholders coverage under the insurance policies issued.  For purposes of resolving the parties' coverage dispute, the Court takes the following factual allegations as true and construes them in Plaintiff's favor at this stage of the proceedings.

Plaintiff owns and operates two restaurants in Portage County, Ohio.  (ECF No. 1-1, ¶ 1, PageID #16.)  Defendant issued an insurance policy to Plaintiff, and the policy was in full force and effect during the relevant times.  (*Id.*, ¶¶ 2, 7, 9, PageID #16–18.)  In March 2020, the President of the United States declared the Covid-19 pandemic a national emergency.  (*Id.*, ¶ 22, PageID #20.)  The State of Ohio, and other states, issued mandatory Stay-At-Home Orders that required "businesses, such as

5

Plaintiff, to shut down, thus suffering a loss of use of their Properties, and resulting in substantial loss of business income." (*Id.*, ¶ 23, PageID #20–21.)

Plaintiff alleges that the pandemic and closure orders caused "direct physical loss of Plaintiff's and Class Members' properties." (*Id.*, ¶ 26, PageID #21.) Specifically, Plaintiff "ceased operations and shut its business by order of the State and Portage County." (*Id.*, ¶27.) Plaintiff does not allege with certainty that the virus was present on its properties, but that "[b]ased on the prevalence of the virus . . . it is probable" that the virus caused "direct physical loss of or damage to [its properties] due to the presence of coronavirus." (*Id.*, ¶ 29, PageID # 22.) Plaintiff further alleges it "has unquestionably sustained direct physical loss as the result of the pandemic and/or civil authority orders issued by the Governor of Ohio." (*Id.*)

Plaintiff alleges Defendant intends to deny its claims based on an inapplicable "virus/bacteria exclusion" that does not expressly exclude coverage for a pandemic. (*Id.*, ¶¶ 31, 37, PageID #22–23.) Plaintiff otherwise maintains that the coverages and exclusions at issue are ambiguous and must be construed against Defendant. (*Id.*, ¶ 40, PageID #23.)

Based on these allegations, Plaintiff asserts three causes of action: (1) declaratory judgment; (2) breach of contract; and (3) insurance bad faith. (*Id.*, ¶¶ 53–80, PageID #29–35.) Defendant moves to dismiss each. (ECF No. 5.)

## GOVERNING LEGAL STANDARD

At the motion to dismiss stage, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

6

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint "states a claim for relief that is plausible, when measured against the elements" of the cause of action asserted.  *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. American Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)).  To meet Rule 8's pleading standard, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  To state a claim, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability."  *Twombly*, 550 U.S. at 555.

In assessing plausibility, the Court construes factual allegations in the complaint in the light most favorable to the plaintiff, accepts the factual allegations of the complaint as true, and draws all reasonable inferences in the plaintiff's favor.  *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015).  In reviewing a motion to dismiss, the Court distinguishes between "well-pled factual allegations," which it must treat as true, and "naked assertions," which it need not.  *Iqbal*, 556 U.S. at 628.  The Court will also not accept as true "[c]onclusory allegations or legal conclusions masquerading as factual allegations[.]"  *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

## ANALYSIS

Auto Owners makes three main arguments for dismissal.  First, Defendant maintains Plaintiff is not entitled to coverage because it has not suffered a Covered

Cause of Loss under the policy, which requires direct physical loss or damage.  (ECF No. 5-1, PageID #136–40.)  Second, Plaintiff's claimed losses also did not trigger Civil Authority Coverage because there was no damage to property other than its own and because access to the covered premises was not completely prohibited as a result of damage to another property.  (*Id.*, PageID #140–42.)  Third, that even if Plaintiff's losses were covered under the policy, the exclusions bar recovery.  (*Id.*, PageID #142–44.)

Plaintiff counters that the policy language is "classically ambiguous" and asks the Court to consider circumstances such as "the parties' relationship, the Policy's purpose, the pandemic's novelty, the experts' testimony, and the insureds' expectation." (ECF No. 13, PageID #655.)  Among other phrases, Plaintiff claims that "direct physical loss of or damage to property" is an ambiguous term.  (*Id.*, PageID #656.)  Plaintiff argues that "physical loss" encompasses loss of use and does not require a material or physical alteration to the property and that the civil shutdown orders barred them from conducting normal business operations at its properties. (*Id.*, PageID #659–65.)  Finally, Plaintiff argues it is unclear whether the virus exclusion bars its claims because the alleged damage was caused by a pandemic.  (*Id.*, PageID #657–58.)

## I.    "Direct Physical Loss of Or Damage to"  Property

This case turns on the meaning of the language "physical loss of or damage to" property in the insurance policies Defendant wrote and issued.  This is so because

8

Defendant agreed to pay for direct physical loss of or damage to property. Specifically, the insurance policy at issue provide:

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

(ECF No. 5-3, PageID #317.)  Although the policy requires physical loss of or damage to property to trigger Business Income and Extra Expense Coverage and Civil Authority Coverage, it does not define physical loss of or damage to property.

When interpreting this contractual language, the Court applies the substantive law of Ohio, which the parties agree governs the insurance policy at issue.  (*See, e.g.*, ECF No. 5, PageID # 135; ECF No. 13, PageID # 653.)

## I.A.    Ordinary and Plain Meaning

Under Ohio's rules for interpreting contracts and insurance policies, "[t]he court's role in interpreting a contract is to 'give effect to the intent of the parties.'" *Fujitec America, Inc. v. Axis Surplus Ins. Co.*, 458 F. Supp. 3d 736, 743 (S.D. Ohio 2020) (quoting *Goodyear Tire & Rubber Co. v. Lockheed Martin Corp.*, 622 F. App'x 494, 497 (6th Cir. 2015) (citing *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St. 3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 37)).  To that end, "[c]ontract terms are generally to be given their ordinary meaning when the terms are clear on their face," and courts must "apply the plain language of the contract when the intent of the parties is evident from the clear and unambiguous language in a provision." *Coma Ins. Agency v. Safeco Ins. Co.*, 526 F. App'x 465, 468 (6th Cir. 2013) (citations omitted); *see also PI&I Motor Express, Inc. v. RLI Ins. Co.*, No. 4:19CV1008, 2019 WL 7282098,

9

at *7, 30 (N.D. Ohio Dec. 27, 2019) (collecting Ohio cases).  Courts must also read the insurance policy as a whole, giving meaning to each term and construing the provisions within the context of the entire policy.  *Id.* (citing *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 172–73, 436 N.E.2d 1347, 1351 (1982)).

Where the policy language is clear, "[c]ourts may not re-write an insurance [p]olicy."  *PI&I,* 2019 WL 7282098, at *10 (citing *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665, 597 N.E.2d 1096, 1102 (1992)).  Similarly, where the contract language is unambiguous, courts may not consider evidence beyond the four corners of the contract to interpret its meaning.  *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 361 (6th Cir. 2014) (citing *Shifrin v. Forest City Enters.*, 64 Ohio St. 3d 635, 638, 597 N.E.2d 499, 501 (1992)).  Courts "presume that words are used for a specific purpose" and "avoid interpretations that render portions meaningless or unnecessary."  *Id.* (citing *Wohl v. Swinney*, 118 Ohio St.3d 277, 2008-Ohio-2334, 888 N.E.2d 1062, ¶ 22).

### I.A.1. "Physical Loss of Or Damage to" Property

After repeated and careful study of these background interpretive principles and the policy at issue, the Court determines that the policy is not ambiguous.  The phrase "physical loss of or damage to" property consists of common words that must "be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instruments."  *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 276

10

(6th Cir. 2019) (citing *Foster Wheeler Enviresponse, Inc. v. Franklin Cnty. Convention Facilities Auth.*, 78 Ohio St. 3d 353, 361, 678 N.E.2d 519, 526 (1997)).

"Physical" means "having material existence:  perceptible especially through the senses and subject to the laws of nature." *Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/physical (last visited Feb. 14, 2021). "Loss" means "destruction, ruin" or "the act of losing possession:  deprivation." *Id.*, https://www.merriam-webster.com/dictionary/loss (last visited Feb. 14, 2021). "Damage" means "loss or harm resulting from injury to person, property, or reputation." *Id.*, https://www.merriam-webster.com/dictionary/damage (last visited Feb. 14, 2021).

Taking these words together according to their ordinary meanings, "physical loss of" property means material, perceptible destruction or deprivation of possession. "Physical damage to" property means material, perceptible harm.  In other words, the phrase intends a tangible loss of or harm to the insured property, in whole or in part.  As the trigger for coverage, this policy language excludes financial or monetary losses resulting from the novel coronavirus, SARS-CoV-2, which occasioned this dispute for the simple reason that the virus did not work any perceptible harm to the properties at issue, even if (construing the allegations in Plaintiff's favor) the virus may be found on surfaces there.

### I.A.2  Other Textual Evidence

This result is not manifestly absurd nor does the policy clearly evidence some other meaning when read as a whole.  For example, the policy defines a "Period of

11

Restoration," which governs when coverage for property loss or damage begins and ends.  The Period of Restoration ends "on the date when the property should be repaired, rebuilt or replaced with reasonable speed and similar quality" or "when business is resumed at a new permanent location."  (ECF No. 5-5, PageID #347–48.) Reading "direct physical loss of or damage to" property to include loss of intended use, as Plaintiff urges, would render the Period of Restoration nonsensical or meaningless because no repair, rebuilding, or replacement of the covered property will occur. Under basic principles of contract interpretation, the Court may not give this language such a reading.  A Period of Restoration ending with repair, rebuilding, or replacement makes sense following and contemplates a material (physical) loss, not a loss of use with no impact to the property's structure.

Some of the exclusions to the definition of "Covered Causes of Loss" further reinforce this reading of the policy language, though not conclusively.  A Covered Cause of Loss excludes losses caused by the "enforcement of any ordinance or law . . . regulating the construction, use, or repair of any property."  (ECF No. 5-3, PageID #331.)  Expressly excluding certain losses due to regulated construction, use, or repair of property ties the insurance to physical or material events.  And where the loss arises from an ordinance or law—in other words, something non-physical or intangible—the policy does not provide coverage.  Similarly, "[d]elay, loss of use or loss of market" are excluded causes of losses, again indicating that the policy requires something more than a mere loss of use or intangible trigger for coverage.  (ECF No. 5-4, PageID #333.)

12

### I.A.3. Plaintiff's Counter Readings

Plaintiff argues that "physical loss of" property means "property deficient or lacking in some quality rendering it unfit for its intended use." (ECF No. 13, PageID #660.)  But the policy does not protect against the "physical loss of *use* or damage to" property.  And the policy unambiguously means that losing the intended use of the property, without a material deprivation of or change to the property itself, is not a covered loss.  Adopting Plaintiff's reading would require the Court to overlook the plain meaning of the phrase or to add words to it.  The Court may not do so.

In an attempt to overcome the plain meaning of "physical loss," Plaintiff directs the Court to a policy definition for "property damage" in an endorsement titled "Employment Practices Liability Insurance Coverage Endorsement." (ECF No. 13, PageID # 661 (citing ECF No. 5-2).)  The first page of the endorsement provides, "The provisions of this EPL Coverage Endorsement apply only to this endorsement" and later defines "property damage" to mean "physical injury to, or destruction of, tangible property including the loss of use thereof, or loss of use of tangible property, which has not been physically injured or destroyed." (ECF No. 5-2, PageID #275, 282.)  Plaintiff's reliance on this endorsement is misplaced.  On its face, the endorsement does not apply outside of it; therefore, it does not dictate the meaning of "physical loss" or "physical damage" as those phrases are used in the Business Income and Extra Expense Coverage Form (ECF No. 5-5, PageID #340).  That Defendant did not define "physical loss or damage" within the relevant endorsements to include loss of use means the Court must rely on the plain meaning of the words

13

and, by their plain meaning, "physical loss or damage" does not include mere loss of use.

Also, Plaintiff insists the terms "physical loss" and "physical damage" must mean something different so that one is not rendered superfluous. (ECF No. 13, PageID #659–60.) The Court does not disagree, but the outcome is the same. Plaintiff was not physically, tangibly, materially deprived of their property, and therefore did not suffer a "physical loss." Nor did they sustain material or physical harm from injury to their property that constitutes "physical damage."

In making this argument, Plaintiff relies on *Studio 417 v. Cincinnati Ins. Co.*, 478 F.Supp.3d 794, (W.D. Mo. Aug. 12, 2020). The *Studio 417* Court concluded that the plaintiffs plausibly alleged a "direct physical loss" because the physical presence of Covid-19 at their properties rendered them "unsafe and unusable." *Id.* at 800. The court referenced the dictionary definitions of "physical" and "loss," but this Court disagrees that the phrase is ambiguous and cannot conclude that it encompasses the type of loss Plaintiff has alleged. *Id.* While Missouri case law apparently supports "that physical loss could be found without structure damage," *id.* at 802, this conclusion does not reflect Ohio law, as discussed below (*see* Part I.B *infra)*. Notably, the policies at issue in *Studio 417* also did not "exclude or limit losses from viruses, pandemics, or communicable diseases." *Id.* at 798.

Plaintiff plausibly alleges that governmental shutdown orders and the possible or actual presence of the coronavirus itself interfered with their intended use of the restaurant properties. Even so, Plaintiff's property was not materially or perceptibly

destroyed, ruined, or harmed, and it remains in Plaintiff's possession.  For these reasons, Plaintiff's alleged loss falls outside the plain meaning of "direct physical loss of or damage to" the property.  Accordingly, Plaintiff has not suffered a Covered Cause of Loss.

### I.B.   Ohio Case Law

When exercising diversity jurisdiction, the Court applies Ohio substantive law according to the decisions of the Ohio Supreme Court.  *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 421 (6th Cir. 2020).  Where the Ohio Supreme Court has not spoken on an issue, the Court must "look to the decisions of [Ohio's] lower courts, to the extent they are persuasive, to predict how the Ohio Supreme Court would decide the issue." *Id.*  If Ohio courts do not provide a clear answer on the relevant issue, the Court must "turn to Ohio's general rules of contract interpretation and insurance law."  *Id.*

Here, the Ohio Supreme Court has not defined "physical loss of or damage to" property.  Therefore, the Court "look[s] to the decisions of [Ohio's] lower courts, to the extent they are persuasive, to predict how the Ohio Supreme Court would decide the issue."  *Id.* (citations omitted).  A few Ohio appellate court decisions shed some light on how the State's highest court would likely interpret the phrase.  Although merely persuasive, the lower Ohio court decisions bolster the conclusion that "physical loss" and "physical damage" do not include loss of intended use.

Most notably, the Ohio Court of Appeals has ruled that the plain meaning of "physical injury" as applied to real property requires "harm to the property that adversely affects the structural integrity" of the property.  *Mastellone v. Lightning*

15

*Rod Mut. Ins. Co.*, 175 Ohio App. 3d 23, 2008-Ohio-311, 884 N.E.2d 1130, ¶ 61 (8th Dist.).  In *Mastellone*, Ohio's Eighth District Court of Appeals held that mold that stained the exterior of a house did not constitute physical injury.  *Id.* at ¶ 68.  *Mastellone* has limitations that Plaintiff points out.  For example, the decision involves homeowner's insurance, not a business interruption policy.  Nor does the decision provide key terms and provisions of the policy.  Beyond that, Plaintiff's attempts to distinguish the case are unpersuasive.  Despite its limitations, and Plaintiff's arguments notwithstanding, *Mastellone* suggests that Ohio courts understand that physical injury in an insurance policy requires actual harm to a structure, not superficial or intangible effects.  Accordingly, *Mastellone* has some persuasive authority consistent with the plain meaning of the parties' insurance contract.

The Sixth Circuit relied in part on the *Mastellone* Court's definition of physical injury to conclude that a "physical loss" encompasses "tangible, physical losses, but [not] economic losses."  *Universal Image Prods. v. Federal Ins. Co.*, 475 F. App'x 569, 573 (6th Cir. 2012) (interpreting Michigan law).  There, the Sixth Circuit reasoned that "physical loss" might occur "when real property becomes uninhabitable or substantially unusable."  *Id.* at 574 (citations and quotations omitted).  For this reason, the court affirmed summary judgment in favor of an insurer on the insured's claim for cleaning and moving expenses resulting from mold contamination where there was no proof the plaintiff was "unable to remain" in the building during remediation.  *Id.*  Here, notwithstanding Plaintiff's "inability to fully rent its hotel

16

units and book catering events" (ECF No. 1-2, ¶ 14, PageID #17), Plaintiff's property has not been rendered uninhabitable or substantially unusable. In this way, the Sixth Circuit's understanding of *Mastellone* aligns with the plain meaning of the policy language, to which Ohio law gives effect.

Additionally, Plaintiff relies on *Polk v. Landings of Walden Condominium Association*, 11th Dist. Portage No. 2004-P-0075, 2005-Ohio-4042, 2005 WL 1862126, at ¶ 79, to argue that Ohio law defines physical loss to include property rendered deficient for its intended use. (ECF No. 13, PageID #659.) But that case makes clear that the court defined the term "loss" without the modifier "physical." *Polk*, 2005-Ohio-4042, at ¶ 79. Further, the loss to which *Polk* refers is the event triggering the claim. For these reasons, the case fails to offer Plaintiff any support for its interpretation of the contract at issue.

Nor does a recent ruling of an Ohio trial court in Hamilton County. In *Queens Tower Restaurant Inc. v. Cincinnati Financial Corp.*, Hamilton C.P. No. A 2001747 (Jan. 7, 2021), an insurance company denied coverage under a business interruption policy for a claim relating to the pandemic, even though the policy at issue did not contain a virus exclusion. The insurer moved to dismiss claims the plaintiff brought on its own behalf and those similarly situated. The trial court denied a motion to dismiss on the basis that the coverage determination is a question of fact. In its entirety, the trial court reasoned as follows: "The Court finds that whether Covid-19 and/or Ohio's orders caused property damage is a question of fact. As such, a reasonable jury could find that [the plaintiff] was entitled to coverage." (ECF

17

No. 14-1, PageID #676.)  Aside from the ruling's conclusory analysis, "[a]n insurance policy is a contract whose interpretation is a matter of law." *Sharonville v. American Emps. Ins. Co.*, 109 Ohio St. 3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 6 (2006) (citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St. 2d 241, 374 N.E.2d 146 (1978), paragraph one of the syllabus).  Accordingly, this decision has little value on the question before the Court.

Nor does *Sylvester & Sylvester, Inc. v. State Automobile Mutual Insurance Co.*, Stark C.P. No. 2020 CV 00817 (Jan. 7, 2021) (ECF No. 16-2), on which Plaintiff relies. In that case, the court rested its ruling on an endorsement for food-borne illnesses not at issue in this case, or any others on which the parties rely to advance their respective positions.  (*See* ECF No. 16-2, PageID #734.)

Finally, Plaintiff cites numerous cases from outside Ohio apparently holding that "direct physical loss of or damage to property" includes loss of use and does not require "structural alteration of the property."  (ECF No. 13, PageID #661–64; ECF No. 12, PageID #673.)  Because these cases do not directly speak to interpretation of the phrase under Ohio law, they have no impact on the Court's decision.

\*     \*     \*

On balance, the Ohio cases support giving effect to the interpretation of the plain language of the term "physical loss of or damage to" property left undefined in the policy.  Although the persuasive value of these lower-court opinions leaves room for debate, the Sixth Circuit has relied on them to interpret language in an insurance

contract (from Michigan) consistent with the meaning clear from the plain language of the policy.  Certainly, these cases offer no reason to deviate from it.

### I.C.  Ambiguity

Because Ohio courts do not provide a definitive meaning for the language at issue, Plaintiff "turn[s] to Ohio's general rules of contract interpretation and insurance law" for support.  *Perry*, 953 F.3d at 421.  Specifically, Plaintiff is left to argue that the parties' contracts are "classically ambiguous."  (ECF No. 13, PageID #655.)  Plaintiff does so to argue for construction of the insurance policy against the insurer.  *Perry*, 953 F.3d at 421 (citing *Andersen v. Highland House Co.*, 93 Ohio St. 3d 547, 549–50, 757 N.E.2d 329, 332–33 (2001)).

Ambiguity means the contract language "cannot be determined from the four corners of the agreement" or "the language is susceptible of two or more reasonable interpretations."  *Coma Ins. Agency* 526 F. App'x at 468 (citing *United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 129 Ohio App. 3d 45, 55, 716 N.E.2d 1201, 1208 (2d Dist. 1998)).  A contract is not ambiguous merely because the parties disagree over its meaning.  *Tattletale Portable Alarm Sys. v. MAF Prods.*, No. 2:14-cv-00574, 2016 WL 5122545, at *6 (S.D. Ohio Sep. 21, 2016) (citing *Shifrin*, 64 Ohio St. 3d at 637–38, 597 N.E.2d at 501).  Significantly, Ohio law does not treat a phrase as ambiguous simply because it is not defined in the relevant policy.  *Penton Media, Inc. v. Affiliated FM Ins. Co.*, No. 1:03 CV 2111, 2006 WL 2504907, at *7 (N.D. Ohio Aug. 28, 2006) (citing *Chicago Title Ins. Co. v. Huntington Nat'l Bank*, 87 Ohio St. 3d 270, 719 N.E.2d 955, 959 (1999)).

Courts will construe insurance policies against the insurer only if the policy language is ambiguous.  *Perry*, 953 F.3d at 421.  As already explained, the ordinary and plain meaning of the phrase "physical loss of or damage to" property requires a tangible, material destruction or deprivation of possession.  Moreover, Plaintiff undercuts any claims of ambiguity by directing the Court to persuasive Ohio law that defines "physical loss" to mean "material deprivation."  (ECF No. 13, PageID #659.)  From there, Plaintiff extrapolates that "material deprivation" includes property rendered "unfit for its intended use."  (*Id.*, PageID #660.)  But that conjecture does not square with the Ohio law on which Plaintiff relies.

In addition to *Polk*, Plaintiff cites *Downwyn Farms v. Ohio Insurance Guaranty Association*, 9th Dist. Lorain No. 89CA004593, 1990 WL 7991, at *3 (Ohio Ct. App. Jan. 30, 1990).  There, an Ohio appellate court concluded that a farmer was "materially deprived" of personal property where the farm lost the farmer's colt for over one year after the farmer delivered the colt for foaling.  *Id.* at *4.  Here, Plaintiff has not been physically deprived of its property.  The complaint does not allege that the virus or government orders caused any material deprivation of the properties.  Plaintiff still possesses it.  The properties exist in the same state as before the pandemic.  The farmer in *Downwyn Farms* could not ride, brush, feed, or otherwise use his colt in any way while it was lost.  He was, according to the court, "materially deprived" of his property.  *Id.* at *4.  Plaintiff, in contrast, was not deprived of its property in the same way as the farmer.  It did not lose the ability to use the property at all, but only its ability to use the property in the way it wished.  In Plaintiff's own

20

words, it was deprived "from making full use of the Property[.]"  (ECF No. 1-1, ¶ 12, PageID #18.)  While the policy may cover a "material deprivation," Plaintiff's interpretation of "material deprivation" to include loss of the ability to make "full use" of its property exceeds the bounds of the meaning of those words on their terms and as the *Mastellone* and *Downwyn* Courts define them.

## II.  Civil Authority Coverage

"When a Covered Cause of Loss causes damage to property other than property at the described premises," the policy provides coverage for lost business income due to the action of civil authorities that prohibits access to the premises.  (ECF No. 5-5, PageID #341.)  Specifically, the policy provides:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises[.]

(*Id.*)  Two additional conditions must also apply for this coverage to kick in.  (*Id.*)

Under the policy, a Covered Causes of Loss means "[d]irect physical loss," subject to certain exclusions or limitations.  (ECF No. 5-4, PageID #331.)  In this way, the availability of the coverage under the civil authority provisions turns on the meaning of the undefined term "direct physical loss" already discussed.  Because the ordinary and plain meaning of that term does not apply to the conditions Covid-19 and the governmental responses to it brought about, the insurance policy does not, as a matter of law, provide coverage.

Two additional points reinforce this conclusion and confirm the unavailability of coverage under the civil authority provision of the policy.  First, the conditions for this coverage provide additional evidence that the polices cover material, physical, tangible damage to property.  For example, the first condition applies only when civil authorities limit access to the area around "damaged property," and the second requires a response of civil authorities to "dangerous physical conditions."  (*Id.*)  The policy language of these conditions provides additional evidence that the policy only covers material, physical losses.  Second, Plaintiff does not allege damage to "property other than property at the described premises."  (*Id.*)  Finally, Plaintiff has not alleged it was completely "prohibited" from accessing the properties, but only that the virus and government orders limited its use of the property.  For all these reasons, Plaintiff is not entitled to coverage under the civil authority provisions of the policy.

## III.   Virus Exclusion

Plaintiff argues that the "invasion and presence" of the virus on its properties, as opposed to the civil shutdown order, was the cause of its claimed losses.  (ECF No. 13, PageID #663.)  As discussed, the mere physical presence of the virus on its property does not constitute physical loss under the policy or Ohio law.  Even if the policy otherwise provided coverage, it contains a virus exclusion the meaning and application of which the parties dispute.  Specifically, the policy excludes coverage for any loss or damage, directly or indirectly, from "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or

22

disease." (ECF No. 5-4, PageID #332.)  On its face, this language is not ambiguous and excludes coverage for the lost use of property Plaintiff claims.

Plaintiff attempts to read ambiguity into the virus exclusion by distinguishing the SARS-CoV-2 virus from the pandemic.  But you cannot have one without the other, at least on these facts.  Plaintiff defines "pandemic" as "any disease prevalent throughout an entire county, continent, or the world." (ECF No. 13, PageID #657 (quotation omitted).)  Plaintiff's argument proves too much.  This pandemic arises from a virus.  Without question, SARS-CoV-2 is a "virus . . . that induces or is capable of inducing physical distress, illness or disease."  That is a matter of common knowledge, pled in the complaint, and the rationale for the governmental orders and consumer behavior that occasioned much of the lost income prompting this suit. (ECF No. 1-1, ¶¶ 19, 20 & 22, PageID #20.)  Recently, an Ohio trial court in Franklin County read similar language in a different policy as excluding coverage for losses claimed for Covid-19 shutdowns and lost business income. *Eye Specialists of Delaware v. Harleysville Worchester Ins. Co.*, Franklin C.P. No. 20-cv-6386 (Feb. 1, 2021).  For the foregoing reasons, the virus exclusion bars coverage in any event.

To the extent Plaintiff alleges that governmental orders caused its loss unrelated to the virus, the complaint directly links the government orders to the virus:  "Coronavirus and the pandemic cause[d] direct physical loss and property damages. . . . .  The executive orders issued by the Governor of Ohio, and the majority of other State  Governors, in response to the pandemic, have caused direct physical loss of Plaintiff [sic] and Class Members' properties." (ECF No. 1-1, ¶ 26, PageID

23

#21.)  Moreover, even assuming the government orders alone caused Plaintiff's loss, the policy excludes coverage resulting from the "[s]eizure or destruction of property by order of governmental authority," (ECF No. 5-4, PageID #331), and from "[a]cts or decisions, including the failure to act or decide, of any . . . governmental body," (*id.*, PageID #335).

Even if Plaintiff's claimed losses arose from governmental action and not the virus itself, the virus exclusion applies to loss or damage caused "directly or indirectly" by a virus.  (ECF No. 5-4, PageID #331.)  This policy language sweeps aside any issue of causation as to whether the virus or government orders caused Plaintiff's loss.  Put another way, the reach of the exclusion to losses a virus indirectly causes does not require parsing the causal chain legally and obviates the need for factual development.  To the extent there is any doubt on the matter, the policy applies the exclusion "regardless of any other cause or event that contributed concurrently or in any sequence to the loss."  (*Id.*)

For these reasons, Defendant has carried its burden of showing that the losses Plaintiff alleges fall squarely within the policy language of the virus exclusion.  In the Court's view, the language of the exclusion is plain and unambiguous and covers the losses Plaintiff alleges.

## IV.    Other Authorities

Three similar cases from other Judges in this Court also merit some brief discussion.

24

#### IV.A.  *Santo's Italian Café*

In *Santo's Italian Café LLC v. Acuity Insurance Co.*, No. 1:20-cv-01192, 2020 WL 7490095 (N.D. Ohio Dec. 21, 2020), Judge Barker dismissed the claims of a restaurant owner for coverage of losses due to Covid-19 under its business interruption insurance policy.  That case, like this one, principally turned on the meaning of the phrase "direct physical loss of or damage to property."  In determining that the policy did not provide coverage, the *Santo's* Court exhaustively reviewed Ohio insurance law in conjunction with its reading of the policy language.  *Id.* at *6–12.  That analysis supports the result the Court reaches in this case.

#### IV.B.  *Henderson Road Restaurant Systems*

Plaintiff relies on *Henderson Road Restaurant Systems, Inc. v. Zurich American Insurance Co.*, No. 1:20 CV 1239, 2021 WL 168422 (N.D. Ohio Jan. 19, 2021).  (*See* ECF No. 12.)  There, Judge Polster granted summary judgment to the insureds, owners and operators of restaurants who brought breach of contract and declaratory judgment claims following denial of insurance coverage relating to losses sustained as a result of the Covid-19 pandemic.

As here, the core issue in *Henderson Road* involves the meaning of the phrase "direct physical loss of or damage to property" in the insurance policy.  Finding this language ambiguous, the *Henderson Road* Court construed it against the insurer. 2021 WL 168422, at *10.  Further, the court disagreed with the *Santo's* Court's reading of how Ohio courts would interpret and apply this language.  *Id.* at *10–11. After careful review of the plain and ordinary meaning of the policy language at issue

25

in this case, the Court is not persuaded by the reasoning in *Henderson Road* or that decision's determination that the policy language at issue is ambiguous.

Additionally, reading the policy as the *Henderson Road* Court does creates a host of potential practical and legal problems. For example, if insurance covers a loss for which the insured also receives governmental assistance through one of the many federal or State Covid relief programs, has the insured received a double recovery, or does the insurer have a subrogation interest? This is not an idle consideration. Indeed, the *Henderson Road* Court recognized that property may be lost, triggering coverage, then later returned to use or restored. *Id.* at *12. If the policy language dictates such a result, so be it. But the potential follow-on issues and disputes advise caution. Because, in the Court's view, the policy language here determines the availability of coverage, these sorts of considerations ultimately play no role in the Court's decision.

One difference between the policy in *Henderson Road* and the policy here involves the virus exclusion. There, the exclusion pertained only to microorganisms. *Id.* at *14. Although the parties there debated whether a virus counts as a microorganism, that issue does not arise in this case because the policy here expressly excludes coverage for loss arising, directly or indirectly, from a virus. (ECF No. 5-4, PageID #332.)

Based on *Henderson Road*, one Ohio trial court recently concluded that a Westfield policy containing the phrase "direct physical loss or damage to property" was ambiguous. *See McKinley Dev. Leasing Co. v. Westfield Ins. Co.*, Stark C.P. No.

26

2020 CV 00815 (Feb. 9, 2021) (ECF No. 16-1.)  There, the court agreed that "[b]oth sides provided reasonable interpretations of the policy language."  (ECF No. 16-1, PageID #722.)  For that reason, the court thought the policy was ambiguous and construed the language against the insurer.  (*Id.*)  The court did the same with respect to the virus exclusion.  (*Id.*, PageID #725.)  But under Ohio law, a phrase is not ambiguous simply because the parties disagree over its meaning or offer reasonable, competing interpretations.  *Tattletale Portable Alarm Sys.,* 2016 WL 5122545, at *6 (citing *Shifrin*, 64 Ohio St. 3d at 637–38, 597 N.E.2d at 501).  For this reason, the Court regards *McKinley Development Leasing* as resting on legal error and discounts its weight as persuasive authority accordingly.

In one important respect, the Court does agree with the *Henderson Road* Court:  what matters in interpreting the insurance policy at issue is not picking and choosing among competing persuasive authorities or simply counting their numbers.  Instead, "the Court must look to the plain meaning of the words, not persuasive authority from other courts."  *Henderson Road* at *12.  Although the Court reaches a different result than *Henderson Road*, the language of Plaintiff's policy compels that result.

### IV.C. *Neuro-Communication Services*

In *Neuro-Communication Services, Inc. v. Cincinnati Insurance Company*, Case No. 4:20-cv-01275 (N.D. Ohio Jan. 19, 2021), Judge Pearson certified a question similar to the dispositive one in this case to the Ohio Supreme Court for review. There, the plaintiff filed suit on its behalf and a nationwide class of insureds with

similar policies who were denied coverage for losses relating to the pandemic. The policy at issue covers "direct 'loss' to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss." (Case No. 4:20-cv-01275, ECF No. 43, PageID #1008.) The specific question certified to the Ohio Supreme Court is:

> Does the general presence in the community, or on surfaces at a premises, of the novel coronavirus known as SARS-CoV-2, constitute direct physical loss or damage to property; or does the presence on a premises of a person infected with COVID-19 constitute direct physical loss or damage to property at that premises?

(*Id.*)

Although the policy language at issue in *Neuro-Communication Services* differs from that in this case, the question certified does not. The Court declines to certify the question here because no party in this matter has requested it to do so. Additionally, because Judge Pearson already certified the question, there is no need to do so again or to wait many months for the resolution of this dispute to see whether the Ohio Supreme Court will weigh in on the matter.

## V.  Plaintiff's Claims

Plaintiff asserts three claims for relief: declaratory judgment (Count I); breach of contract (Count II); and insurance bad faith (Count III). Based on the foregoing analysis and discussion, the plain language of the policy precludes relief on each claim as a matter of law. No amount of discovery can change that conclusion.

### V.A.  Declaratory Relief

No cognizable legal theory or set of facts would allow the Court to provide declaratory relief. To prevail on a declaratory-judgment claim in Ohio, a plaintiff

must show three elements:  "(1) a real controversy exists between the parties, (2) the controversy is justiciable in character, and (3) speedy relief is necessary to preserve the rights of the parties."  *Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, 970 N.E.2d 898, ¶ 31.  The Court cannot award Plaintiff the declaratory relief it seeks where it has failed to allege a Covered Cause of Loss according to the plain language of the policy.  Accordingly, the Court dismisses Count I.

### V.B.   Breach of Contract

"To establish a claim for breach of contract, a plaintiff must prove: (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages or loss resulting from the breach."  *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 276 (6th Cir. 2019) (citing *Claris, Ltd. v. Hotel Dev. Servs., LLC*, 2018-Ohio-2602, 104 N.E.3d 1076, ¶ 28 (10th Dist.)).  Under the policy, reading the words in context according to their usual and ordinary meaning, Defendant did not breach the contracts by denying coverage for Plaintiff's claimed losses because the claimed losses do not trigger coverage under the policy.  Therefore, the Court dismisses Count II of Plaintiff's complaint.

### V.C.   Insurance Bad Faith

As discussed, the policy does not provide coverage for Plaintiff's claimed losses. Accordingly, Defendant's denial of coverage was reasonable, necessitating dismissal of Plaintiff's bad faith claim.  *Cleveland Freightliner, Inc. v. Federated Serv. Ins. Co.*, No. 1:09CV1108, 2010 WL 395626, at *13 (N.D. Ohio Jan. 26, 2010) ("Ohio law clearly states if denial of coverage is appropriate there is no bad faith.") (citing *Hahn's Elec.*

29

*Co. v. Cochran*, 10th Dist. Franklin No. 01AP-1391, 01AP-1394, 2002-Ohio-5009, ¶ 42); *Pasco v. State Auto. Mut. Ins. Co.*, 10th Dist. Franklin No. 99AP-430, 1999 WL 1221633, at \*6 (Dec. 21, 1999) ("If a reason for coverage denial is correct, it is per se reasonable." (quotation and citation omitted)).    Because Defendant acted appropriately by denying coverage, the Court dismisses Plaintiff's claim for insurance bad faith.

## CONCLUSION

In this ruling, the Court does not intend in any way to dismiss or minimize the pain or difficulties those in the hospitality business have endured since the outbreak of the pandemic.  But the question before the Court is a narrow one, limited to interpretation of language in Plaintiff's insurance policy.  For all the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss for failure to state a claim on which the Court may grant relief.  (ECF No. 5.)  As part of its motion to dismiss, Defendant moved to strike the class allegations, which is now moot and therefore **DENIED**.  (ECF No. 5.)

**SO ORDERED.**

Dated:  February 17, 2021

_____
       J. Philip Calabrese
       United States District Judge
       Northern District of Ohio